CYRUS WASHBURN, Executor of APOLLOS CLAPP, *v.* THOMAS W. TITUS.

(*In Chancery.*)

 The testator conveyed to defendant a farm and took back a bond and mortgage. The executor brought a bill to compel a performance of the bond, according to the construction claimed by him. The answer stated the bond and mortgage and claimed that the defendant had performed the condition thereof.

 *Held*, that the construction to be given to the bond, as well as, whether the same had been performed, were questions to be tried in the courts of law; that the remedy of the orator was wholly at law, and the bill was dismissed without prejudice, but with cost.

 On the 20th December, 1834, the orator's intestate conveyed his farm, in Vernon, to the defendant, for the consideration, as stated in the deed, of $1700. The defendant, on the same

day, executed to the intestate a bond, in the penal sum of $2500, conditioned, as follows, viz—" that, whereas, the above named Appollos Clapp has this day deeded his farm, lying in said Vernon, containing one hundred and twenty acres more or less, for the consideration of seventeen hundred dollars, for the support and maintenance of the said Appollos, to Thomas W. Titus, who has agreed to support and maintain the said Apollos, to the extent of said means and sum, and the interest accruing on the same ;—

Now, if the said Thomas W. Titus shall well and truly maintain and support the said Appollos Clapp, on the said place in Vernon, or at such other place as the said Appollos and Thomas W. may agree upon, in sickness and in health, from this time forth, during his natural life, and shall, at all times, deport himself tenderly and respectfully towards the said Appollos, and shall furnish and supply him at all times; with good and sufficient food, apparel, medicine, fire, lodging, room and every thing proper and comfortable, according to his condition and situation, and shall furnish him, from time to time, with all necessary, proper and convenient money for his own benefit, use and expenditure, until the whole amount of the consideration, and amount of seventeen hundred dollars aforesaid, with the interest yearly accruing on the same, shall be fairly expended, as aforesaid, in said Appollos' support, then this obligation to be void, otherwise to remain in full force and virtue.

THOMAS W. TITUS, [L. S.]

To secure the performance of the condition of the bond, the defendant, on the same day, executed a mortgage deed of the premises in question to the intestate, the proviso of which deed was as follows, to wit—" if I, the said Thomas W. Titus, my heirs, executors, administrators or assigns, shall well and truly pay, or cause to be paid Appollos Clapp, and furnished and provided for him, his heirs, executors or assigns the maintenance and support of the said Appollos Clapp, from the date of this instrument; during his natural life, or till the whole of the above consideration and amount of seventeen hundred dollars, and the interest accruing thereon, shall be fairly expended in his support; and shall furnish and supply him, the said Appollos Clapp, at all times, with good and sufficient food, apparel, medicine, firewood, room and every thing proper and comfortable, according to his condition and situation, and shall furnish him, from time to

time, with all necessary, proper and convenient money, for his own benefit, use and expenditure, until the whole amount of seventeen hundred dollars, as aforesaid, with the interest yearly accruing on the same, shall be fairly expended, as aforesaid, in said Appollos' support, according to the tenor and effect of my bond, bearing even date with these presents, and duly executed and delivered to the said Appollos, then, this deed to be void, otherwise in full force and effect."

The other facts in the case sufficiently appear from the opinion of the Court, delivered by

WILLIAMS, CHAN.—The bill states that the testator, Clapp, was afflicted with the delirium tremens, and became debilitated so as to be unable to carry on and manage his farm ; and that, on the 1st December, 1833, he leased it to the defendant, to receive his support by way of rent; that on the 20th December, 1834, the defendant persuaded and induced the orator to sell and convey the farm to him for the sum of $1700, on credit, and, that defendant agreed to pay said sum of $1700 ; that on the 28th October, 1835, the testator died, and the orator was appointed executor ; and praying that defendant may be decreed to pay the sum of $1700, deducting what he has expended in the support of the testator.

The answer sets forth the contract, by which it appears that, at the time of executing the deed, the defendant, Titus, executed a bond and mortgage, which are stated in the answer.

The testimony does not warrant the allegation, that any means were made use of to persuade or induce the testator to make the contract, or execute the deed; nor is there any evidence that the mind of the testator was weak, or that his faculties were impaired by age or disease. On the contrary, he appears to have been a man about middle age, peaceable in his behavior, and, for aught that appears, as capable as he ever was, of disposing of his estate, making any contracts or managing his affairs; but that he was addicted to intemperance. Nothing appears, but that he fully understood the nature, extent and consequences of the the contract he did make with the defendant. He frequently expressed himself satisfied with the manner, in which he was treated by the defendant. There is nothing in the contract itself, which a man, in the exercise of his faculties, might not make, or, in other words, an intelligent man might make such a contract as the defendant contends was made by the testator, as well as such an one as the orator contends for. If the contract

was for his support, it would have been singular if he had inser-ted a provision as to his funeral expenses, the omission of which has been argued as evidence of his incapacity. Surely, no man, who was investing a sum of money to be expended for his support and maintainance, and which he contemplated might be exhausted, in that way, before his death, would insert a provision, that a certain part of that sum should be reserved for the purpose of his burial; the testator, much more rationally, in his will, provided for the paying of those expenses, from his personal property, out of the legacies therein given. We should not be warranted, therefore, in this case, from the testimony, in rescinding the contract, upon any of the grounds mentioned, if the prayer of the bill had been framed for that purpose.

We must, then, turn our attention to the contract, as contained in the bond and mortgage, learn what it is, and whether the orator is entitled to the relief prayed for, or to any other relief, under the general prayer.

In the first place, it may be remarked, that the bill sets forth no trust, either express or resulting. In framing the bill, the orator could not have had in view a trust arising by operation of law, on the bond and mortgage, as neither of them are noticed in the bill. Possibly, however, if the papers, produced, established a trust, we might so consider it, and decree accordingly. The construction, to be placed on the contract, is to be learned from the writings executed, and not from any parol testimony. The parol testimony, however, does not disclose any thing different from what the writings themselves purport to be. As the orator has not insisted on any trust in the bill, neither can we discover, from the testimony, any trust, which calls for the aid of a court of chancery to enforce, or carry it into effect. The testator executed a deed. The defendant executed a bond and a mortgage, to secure the performance of the conditions of the bond. The bond and mortgage were the consideration of the deed. The land was conveyed by the deed, and the testator took such a bond and mortgage as he thought proper, and with such conditions as he thought would secure the performance of the contract made between them.

Whether, therefore, the defendant was to pay $1700, for the farm, at all events, or whether the condition was performed, when he supported the testator, in the manner therein prescribed, until his death, or whether his obligation is to pay any thing further,

are wholly questions of law, arising upon the construction to be placed on the bond and mortgage.

Windham,
February,
1837.

Washburn
v.
Titus.

In this view of the case, we can see no reason for the interposition of the powers of a court of chancery. The remedy of the orator, if he has any, is upon the bond and mortgage. We cannot vary the terms of the condition, or make any new one. If the construction is as contended by the orator, he may sue at law, either upon the bond, or by action of ejectment to recover the premises mortgaged, or he may come into chancery to foreclose his mortgage. At any rate, he cannot call upon the court of chancery, in this suit, to put a construction upon that bond, and decree a payment of the same. On the other hand, if the construction is as contended for by the defendant, it will furnish a good defence to any action, which the orator may institute, either upon the bond or mortgage. As we consider the orator not entitled to enforce this contract or bond in a court of chancery, the result is, that the bill must be dismissed with cost, but without prejudice.

*Keyes & Bradley, Solicitors for orators.*

*J. Phelps & Daniel Kellogg, Solicitors for defendants.*